USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/16/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
UNITED STATES OF AMERICA,                                    :
                                                             :
        -v-                                                  :    19-CR-300 (VSB)
                                                             :
DARREL HARRIS,                                               :    **OPINION & ORDER**
                                                             :
                        Defendant.                           :
                                                             :
-------------------------------------------------------------X

VERNON S. BRODERICK, United States District Judge:

      Defendant Darrel Harris ("Defendant" or "Harris") was initially charged in a criminal complaint ("Complaint" or "Compl.") filed on March 26, 2019, with being a convicted felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 2. (Doc. 1.) On April 23, 2019, a grand jury sitting in the Southern District of New York returned an indictment against Harris charging him with violation of Title 18, United States Code, Sections 922(g)(1) and 2. (Doc. 18.)

      Currently before me is Defendant's motion seeking release on bond pursuant to Title 18, United States Code, Sections 3142(f) and (i). (Doc. 38.) Specifically, Defendant seeks "release on temporary bail because [of] a dramatic change in personal circumstances related to [Defendant's] family, as well as the inability of the Bureau of Prisons ('BOP'), to adequately address the COVID-19 epidemic and the threat it poses to inmates, constitutes a compelling reason to change the current order of detention." (Doc. 38 at 2.) In addition, Defendant argues that his temporary release is "necessary" because of "the inability of counsel to meet with [him] and prepare for trial since February, 2020, when MCC began to bar lawyers from legal visits with clients". (*Id.*) As described more fully below, because I find that the circumstances set

forth by Defendant do not have a material bearing on the issue of whether he presents a danger to the community to warrant reconsideration of the prior detention determination, and, after balancing the reasons advanced for temporary release against Defendant's danger to the community and specific individuals, temporary release is not appropriate under Section 3142(i), Defendant's motion is DENIED.

## I.  Background[1]

### A. *Conduct Described in the Criminal Complaint*

On November 16, 2018, the New York City Police Department ("NYPD") received information that "a man and a woman were involved in a domestic-violence incident and that the man was in possession of a firearm inside 2805 Dewey Avenue, Apartment 7E, Bronx County, New York (the ["Apartment"])."[2] (Compl. 2.) Two officers assigned to Police Service Area 8 ("P0-1" and "P0-2") responded to the building outfitted with body-worn cameras and went to the Apartment. (Compl. 2.) P0-1 and P0-2 met a woman with scratches on her face (Woman-1), who answered the door when they knocked and allowed them into the Apartment. (Compl. 2.) Woman-1 stood with P0-1 and P0-2 in a hallway and the adjoining kitchen, and the police officers saw Defendant first standing in the hallway and then walking down the hallway towards the officers and away from a bedroom (the "Bedroom"). (Compl. 2.) P0-1 and P0-2 observed that Defendant also had scratches on his face. (Compl. 2.) Harris and Woman-1 each confirmed that a "dispute" had occurred between them, and then P0-1 and P0-2, with other police officers who arrived at the Apartment, placed Defendant and Woman-1 under arrest for various

---

[1] The facts in this section are taken from the Complaint filed in this action, (Doc. 1, "Compl."), and the Government's letter to me on March 26, 2019 ("Govt. Opp."), (Doc. 22).

[2] According to the Government, the NYPD had received multiple 911 calls, and officers responded to the Apartment in response to those calls. (Govt. Opp. 6.)

2

domestic-violence related charges.  (Compl. 2.)

When a woman arrived at the Apartment, who police officers understood to be one of the tenants of the Apartment ("Woman-2"), she was shown and reviewed a consent to search form written in English and explained in English and in Spanish to her by a police officer who was fluent in English and in Spanish.  (Compl. 3.)  This exchange was captured on an officer's body-worn camera ("P0-3").  (Compl. 3.)  Among other things, PO-3 explained that they wished to search the Apartment to locate a firearm.  (Compl. 3.)  Woman-2 gave consent to the NYPD to search the Apartment, and police officers searched the Apartment.  (Compl. 3.)  Much of this search was recorded by at least two body-worn cameras.  "P0-2, who was searching the Bedroom, found a nine-millimeter Ruger pistol (the 'Firearm') together with a compatible and loaded nine-millimeter magazine, which were located inside a plastic bag containing bedding materials," which Woman-2 identified as having been recently purchased.[3]  (Compl. 3.)

On November 16, 2018, NYPD Evidence Collection Team swabbed the Firearm in multiple locations to collect possible samples of DNA.  That same day Defendant was interviewed on videotape by PO-1 and another police officer.  During that videotaped interview, Defendant drank from a cup, and that cup was later used to collect a sample of his DNA. (Compl. 3.)

In or about 2019, the Office of the Chief Medical Examiner for the City of New York (the "OCME") compared samples of DNA identified in the swabs taken from the Firearm and the sample of DNA taken from the cup used by Harris during his interview.  (Compl. 3.)  The results of the analysis by the OCME showed that with respect to multiple locations on the

---

[3] Hereinafter, the nine-millimeter Ruger pistol will be referred to as the Firearm.  According to a special agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, based upon his expertise and his observations of the Firearm, including photographs of the Firearm, "the Firearm was not manufactured in the State of New York."

3

Firearm from which a mixture of DNA was obtained, "it was as much as 66.4 trillion times more probable that the mixture of DNA found on the Firearm included DNA for [Defendant] and one other unknown person than for two unknown persons." (Compl. 3-4.)

Defendant was previously convicted of a felony. Specifically, Harris "was convicted in the Supreme Court of the State of New York, Bronx County on or about April 15, 2015 of Manslaughter in the First Degree, in violation of New York Penal Law Section 125.20(1)", a crime punishable by a term of imprisonment exceeding one year. (Compl. 4.)

An arrest warrant issued for Defendant on March 26, 2019, and he was arrested on April 1, 2019. Defendant was arrested at a shelter in Manhattan. Based upon (1) the nature of the offense; (2) Defendant's violent criminal history; (3) Defendant's history of noncompliance with prior terms of supervision; (4) Defendant's repeated criminal activity; and (5) Defendant's possible membership in a gang, Pretrial Services determined that Defendant's detention was warranted because "[there is] no condition or combination of conditions to reasonably assure the safety of the community." (Doc. 39 at 1.)

### B. *Bail Determinations*

On April 1, 2019, Defendant appeared for his initial appearance before Magistrate Judge Robert W. Lehrburger. At the initial presentment, the Government sought detention consistent with the recommendation of Pretrial Services. Defendant sought his release on bail. Although finding that the "the question of the risk to the public was a close one, Judge Lehrburger found that the Government had failed to carry its burden with respect to the danger that the defendant posed to the community." (Doc. 39 at 3.) Judge Lehrburger set bail which included a bond of $100,000 requiring the signature of three financially responsible persons, and Defendant's mother for moral suasion, an overnight curfew at the shelter where the defendant had lived for

4

several weeks, and electronic monitoring as directed by Pretrial Services. (Doc. 39 at 3.)

The next day, the Government appealed Judge Lehrburger's bail determination to United States District Judge George B. Daniels, who presided over that appeal as the judge on Part I duty. Judge Daniels ordered Defendant detained pending a one-week adjournment during which he ordered that the Government provide additional information regarding Defendant's criminal history and Defendant to provide additional information regarding proposed co-signors. On April 10, 2019, the Government provided Judge Daniels with additional evidence related to Defendant's criminal history and gang membership in the Bloods, and presented the testimony of Detective Carlos Lozada of the Bronx Gang Squad on the issue of Defendant's gang membership. Judge Daniel's detained Defendant and noted that he was "not going to have him released at this point. If you want to propose another package, I'll consider it. But given the violent nature of his history, I believe that it's not appropriate to release him and make a determination that he's not a danger to the community." (04/10/19 Tr. at 35:2-6). With regard to the potential of Defendant's mother and sister being co-signors on any bond, Judge Daniels stated, "[y]ou know given the fact they're potential witnesses in this case, I don't think so." (*Id.* at 31:14-15). Judge Daniels then adjourned the case for two weeks for arraignment on the anticipated indictment against Defendant. (Doc. 39 at 3.)

On April 24, 2019, Defendant was arraigned by Judge Daniels on an indictment charging him with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 2. Because Defendant's case was assigned to Judge Deborah A. Batts, Judge Daniels deferred decision on the bail appeal to Judge Batts. (Doc. 39 at 3.)

At the initial conference on April 24, 2019, before Judge Batts, defense counsel explained that Defendant was not presently seeking bail noting that "Judge Daniels rejected the bail

5

package," and further stating, "[i]t appears that two of the three cosigners we were offering are actually witnesses in the case, and Judge Daniels didn't feel that—" at which point Judge Batts stated, "I agree with that." (04/24/19 Tr. at 3:11-15).

On July 16, 2019, Defendant renewed his request for bail, which was opposed by the Government. After briefly hearing from the parties, Judge Batts denied bail stating:

> All right. Let me make this clear. I have carefully reviewed everything that was before Judge Lehrburger and Judge Daniels, as well as the submissions of the parties. My concern, quite frankly, is danger to the community.
>
> It seems to me that if it were to be believed, and there is credible evidence, if I understand that the [G]overnment has actually body cameras that have the sister talking to the police saying that he has a gun and that he had kept the mother captive with her and they had escaped, that he was out in the hallway of the public housing pointing the gun, that in and of itself, to me, is almost a definition of danger to the community.
>
> I agree that there are no bail conditions that will protect the very people that are closest to Mr. Harris—his mother and his sister—and, again, I think that there is a chance that they might be witnesses in the case.
>
> It is my determination that Mr. Harris shall remain remanded and bail is denied.

(07/16/19 Tr. at 5:13-6:6).

## II. Procedural History

On May 15, 2020, Defendant filed a letter motion seeking release on bond pursuant to Title 18, United States Code, Sections 3142(f) and (i). (Doc. 38.) The Government filed a letter in opposition to Defendant's motion on May 19, 2020. (Doc. 39.) Defendant filed his reply on May 20, 2020. (Doc. 40.) On June 30, 2020, Defendant filed a supplemental letter "regarding underlying facts in support of [Harris's] motion." (Doc. 44.)

6

### III.  Discussion

Defendant Harris seeks "temporary bail because [of] a dramatic change in personal circumstances related to [Defendant's] family, as well as the inability of the Bureau of Prisons ("BOP"), to adequately address the COVID-19 epidemic and the threat it poses to inmates, constitutes a compelling reason to change the current order of detention." (Doc. 38 at 2.)  With regard to the change in his family's circumstances, Defendant argues that because of the death of his father in 2019, the deaths of two cousins due to COVID-19 related complications, his mother's various health issues, and the need for his sister to work five-days a week have made it increasingly difficult to manage care for his mother.  (*Id*. at 5; Doc 44.)  In addition, Defendant argues that his temporary release is "necessary" because of "the inability of counsel to meet with [him] and prepare for trial since February, 2020, when MCC began to bar lawyers from legal visits with clients".  (Doc. 38 at 2.)  Harris also argues that "the COVID-19 pandemic and its impact on prison inmates in combination with family circumstances, provides a 'compelling reason' for temporary release." (*Id*. at 5.)  With regard to his conditions of confinement, Defendant argues that his ability to prepare a defense is being impeded by the measures put in place by the Bureau of Prisons ("BOP") at the Metropolitan Correctional Center ("MCC") to mitigate the spread of COVID-19.  (*Id*. at 7.)  In opposition, the Government argues that Defendant does not meet the criteria for reconsideration of the detention finding by Judge Batts under section 3142(f), and that Defendant should not be released temporarily from custody pursuant to Section 3142(i) because:  (1) of the nature and circumstances of the offense; (2) of the weight of the evidence; (3) of Defendant's history and characteristics; (4) Defendant poses a danger to the community; (5) neither the existence of COVID-19 nor Defendant's family circumstances warrant his temporary release from custody; and (6) temporary release is not

7

necessary to permit Defendant to assist with his defense.  (Doc. 39 at 5-12).

      A. *Applicable Law*

            **1.  The Bail Reform Act**

The Bail Reform Act "requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless [the court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'"  *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007) (alteration in original) (quoting 18 U.S.C. § 3142(b)).  If a court determines that release on a recognizance bond would not "reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," 18 U.S.C. § 3142(c)(1), "the law still favors pre-trial release 'subject to the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as required,'" *Sabhnani*, 493 F.3d at 75 (quoting 18 U.S.C. § 3142(c)(1)(B)).  Section 3142(f) provides in relevant part that a "judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community."  18 U.S.C. § 3142(f).  However, if after considering the conditions and combination of conditions set forth in subsection (c) a court determines "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial."  18 U.S.C. § 3142(e)(1); *see also Sabhnani*, 493 F.3d at 75 ("Only if a detention hearing shows 'that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . shall [the court] order the detention of the person before trial.'" (alterations in

original) (quoting 18 U.S.C. § 3142(e)).

With regard to burden of proof, if the Government is seeking detention based on a defendant's danger, "[t]he facts the judicial officer uses to support a finding . . . that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2)(B). If, on the other hand, the Government is seeking detention based on a defendant's flight risk, the Government must first prove by a preponderance of the evidence that the "defendant presents a risk of flight." *Sabhnani*, 493 F.3d at 68 n.5. In addition, pursuant to 18 U.S.C. § 3142(f)(2)(B), a detention "hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community."

### 2. Temporary Release Pursuant to 18 U.S.C. § 3142(i)

Section 3142(i) provides that, where a detention order has previously been issued under Title 18, United States Code, Section 3142(e), "[a] judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i)(4). Family members may constitute "appropriate persons" when a defendant is released to relatives and placed under 24-hour home incarceration. *See United States v. Stephens*, No. 15-cr-95 (AJN), 2020 WL 1295155, at *2–3 (S.D.N.Y. Mar. 19, 2020) (granting defendant's request for reconsideration of bail conditions and, in the alternative, releasing the defendant pursuant to §

9

3142(i) to the custody of his mother as an "appropriate person" and placing defendant under 24-hour home incarceration); *United States v. Perez*, No. 19 Cr. 297 (PAE), 2020 WL 1329225, at *1–2 (S.D.N.Y. Mar. 19, 2020) (releasing the defendant pursuant to § 3142(i) to the custody of his wife as an "appropriate person" and placing defendant under 24-hour home incarceration); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143, 146–47 (D.P.R. 2002) (releasing the defendant, who would have otherwise been detained, to the custody of his mother and grandmother on 24-hour house arrest due to his severe injuries); *but see United States v. Landji*, No. (S1) 18 Cr. 601 (PGG), 2020 WL 1674070, at *6 (S.D.N.Y. Apr. 5, 2020) (denying request for release under § 3142(i) where defendant had "not identified an 'appropriate person' into whose custody he could be released"); *United States v. Steward*, No. S1 20cr0052 (DLC), 2020 WL 1468005, at *1 (S.D.N.Y. Mar. 26, 2020) (denying temporary release pursuant to § 3142(i) in part because defendant had not identified an "appropriate person" with whom he was going to stay).  A "compelling reason" for temporary release exists where release is necessary for the preparation of the defendant's defense.  *See* 18 U.S.C. § 3142(i); *see also United States v. Chandler*, No. 19-cr-867 (PAC), 2020 WL 1528120, at *2 (S.D.N.Y. Mar. 31, 2020) (stating that the "right to prepare for [a] defense[] certainly constitute[s] a 'compelling reason' that permits . . . [a defendant's] temporary release [] pursuant to 18 U.S.C. § 3142(i)," and granting such release when defendant's trial was scheduled to begin on May 11, 2020); *Stephens*, 2020 WL 1295155, at *3 (concluding that temporary release was justified in part to enable the defendant to prepare for an evidentiary hearing only six days away); *but see United States v. Eley*, No. 20 Cr. 78-3 (AT), 2020 WL 1689773, at *1 (S.D.N.Y. Apr. 7, 2020) (denying temporary release under § 3142(i) and stating "with trial scheduled for nine months from now, this case is distinguishable from other instances in which an imminent evidentiary hearing may support a defendant's

10

temporary release"); *United States v. Chambers*, No. 20-CR-135 (JMF), 2020 WL 1530746, at *1 (S.D.N.Y. Mar. 31, 2020) (rejecting defendant's argument that temporary release under § 3142(i) was necessary for the preparation of his defense when non-evidentiary initial pretrial conference was still a month away). A "compelling reason" may also exist where a defendant's serious medical condition warrants release. *See United States v. Rebollo-Andino*, 312 F. App'x 346, 348 (1st Cir. 2009) (explaining that a defendant who is denied bail "retains the ability to request[,] . . . in extraordinary circumstances, . . . temporary release under § 3142(i)" should future developments with respect to his medical conditions so warrant); *United States v. Hernandez*, No. 19 Cr. 169 (VM), 2020 WL 1503106, at *1 (S.D.N.Y. Mar. 30, 2020) (concluding that compelling circumstances existed under § 3142(i) "based on, among other things, the unique confluence of serious health issues and other risk factors facing this defendant, including the defendant's age (64 years old), asthma, and high blood pressure, which place him at a substantially heightened risk of dangerous complications should he contract COVID-19 as compared to most other individuals"); *Perez*, 2020 WL 1329225, at *2 (concluding that compelling circumstances existed under § 3142(i) "based on the unique confluence of serious health issues and other risk factors facing this defendant, including but not limited to the defendant's serious progressive lung disease and other significant health issues"); *United States v. Birbragher*, No. 07-cr-1023-(LRR), 2008 WL 1883504, at *2 (N.D. Iowa Apr. 25, 2008) (describing *United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993), and *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002), as cases where courts found "compelling reason" to temporarily release defendants due to the defendants' serious medical issues).).[4]

---

[4] As outlined by Judge Alison J. Nathan in a recent opinion, in interpreting 18 U.S.C. § 3145's "exceptional reasons" language, "the Second Circuit has described 'exceptional' reasons permitting the release of a defendant

11

"In considering whether there is a 'compelling reason' for a defendant's release under this provision, however, a court must 'balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention. In turn, whether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case.'" *Chambers*, 2020 WL 1530746, at *1 (citation omitted) (denying temporary release pursuant to § 3142(i) where defendant's asthma-related health risks and desire to prepare for forthcoming initial pretrial conference did not overcome the fact that he was a danger to the community); *see also Eley*, 2020 WL 1689773, at *1 (stating that "[a] court must . . . balance" the relevant considerations, and denying temporary release pursuant to § 3142(i) where defendant, a 23-year old with no apparent medical conditions, was alleged to have committed four shootings); *Landji*, 2020 WL 1674070, at *6 (denying temporary release pursuant to § 3142(i) where defendant, a 58-year old with no unique health conditions, was deemed "a danger to the community and pose[d] a significant flight risk"); *United States v. Marte*, No. 19 Cr. 795 (SHS), 2020 WL 1505565 at *1 (S.D.N.Y. Mar. 30, 2020) (denying temporary release pursuant to § 3142(i) because defendant, a 42-year old with no preexisting medical issues, was alleged to be the leader of an oxycodone conspiracy and also charged pursuant to 18 U.S.C. § 924(c)); *Steward*, 2020 WL 1468005, at *1 (denying release under § 3142(i) in part because "defendant's release into the community would endanger the safety of the community," and because there was "no reason to find that the defendant's release would lessen the risk to his health presented by COVID-19"). "A defendant has the burden of showing that temporary release is 'necessary . . .'

---

subject to mandatory detention—arguably a higher standard than 'compelling' reasons—as those that 'present a unique combination of circumstances giving rise to situations that are out of the ordinary.'" *Stephens*, 2020 WL 1295155, at *2 n.2 (quoting *United States v. DiSomma*, 951 F.2d 494, 497 (2d Cir. 1991). "The Second Circuit has explained that determining whether a given circumstance presents exceptional reasons under Section 3145 requires a case-by-case evaluation by the district judge and that the district judge's discretion is 'constrained only by the language of the statute: 'exceptional reasons.'" *Id.* (quoting *DiSomma*, 951 F.2d at 497).

12

under Section 3142(i)." *Stephens*, 2020 WL 1295155, at *2 (alteration in original) (quoting *United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011)).

### B. *Application*

#### 1. Bail Reform Act Factors

Defendant is charged with being a felon in possession of a firearm, an offense that carries a maximum term of imprisonment of ten years. Judge Batts found that Defendant's conduct on November 16, 2018, "is almost a definition of danger to the community." She also agreed "that there are no bail conditions that will protect the very people that are closest to Mr. Harris—his mother and his sister—and, again, I think that there is a chance that they might be witnesses in the case." (07/16/19 Tr. at 5:13-6:6).

Defendant's current request seeks that I reconsider the detention decision of Judge Batts. There are essentially two ways Defendant suggests such a reconsideration should be granted; pursuant to sections 3142(f) and 3142(i). I first address section 3142(f). Defendant "note[s] that changed circumstances are also relevant under 18 U.S.C. § 3142(f) which permits a detention hearing to be re-opened if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person and the safety of the community." (Doc. 38, at 4.) Defendant claims that the bail conditions he is proposing, "including home detention, [his] inability to leave his home unless approved by Pretrial Services or the Court will mitigate any potential danger to the community (or risk of flight)." (*Id.*)

As an initial matter, Defendant does not identify the new evidence that he claims "has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person and the safety of the community." (*Id.*) Defendant's alleged

13

changed family circumstances and the COVID-19 health crisis do not relate to Defendant's conditions of release as they do not relate to the determination of whether he is a risk of flight or a danger to the community. Therefore, Defendant failed to demonstrate evidence to support my reconsideration of Judge Batts's detention determination pursuant to Section 3142(f).

In any event, I do not find Defendant's proposed bail conditions sufficient to mitigate Defendant's danger to the community. Here, I considered, among other things, "(1) the nature and circumstances of the crime charged; (2) the weight of the evidence against [][D]efendant; (3) the history and characteristics of [] [D]efendant, including family ties, employment, community ties, and past conduct; and (4) the nature and seriousness of the danger to the community or to an individual" that the Defendant's release would present. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001).

### a. The Nature and Circumstances of the Crimes Charged

Defendant is charged with being a felon in possession of a firearm. Defendant Harris was arrested, at least in part, because of an argument he had with his girlfriend that also apparently involved his sister and mother, during which he brandished a firearm. There is also evidence that this argument became physical because police officers observed scratches on Defendant's face and his girlfriend's face. The argument apparently was so intense that several people called 911.

### b. The Weight of the Evidence Against the Defendant

As this stage of the case, the evidence against Defendant appears to be strong. First, there are apparently eyewitnesses who saw Defendant with the Firearm.[5] Second, after obtaining written consent to search from a tenant of the Apartment—consent that was explained to the

---

[5] One of the tenants of the Apartment was recorded by one of the body-worn video cameras stating: (1) Defendant had a gun; (2) the argument between Defendant and his girlfriend escalated into a physical altercation during which Defendant hit his girlfriend; (3) Defendant attempted to hit the tenant; and (4) Defendant had been living in the Apartment on and off for a few weeks prior to November 16, 2018. (Govt. Opp., Exhibit G.)

14

tenant in English and Spanish and captured on videotape—officers searched for and found the Firearm. Finally, the OCME compared samples of DNA identified in the swabs taken from the Firearm and the sample of DNA taken from the cup used by Harris during his interview, and that analysis showed that with respect to more than one location on the Firearm from which a mixture of DNA was obtained, "it was as much as *66.4 trillion times* more probable that the mixture of DNA found on the Firearm included DNA for [Defendant] and one other unknown person than for two unknown persons."[6] (Doc. 39 at 6) (emphasis in original.)

### c. The Defendant's History and Characteristics

Defendant's history and characteristics militate against granting him release on bail. Specifically, (1) Defendant's interactions with his girlfriend and the underlying conduct that resulted in his arrest, including his behavior captured on the body-worn cameras of police officers; (2) Defendant's history of convictions for violent crimes; and (3) his prior violations of the terms of his release.

Although there was no testimony during the prior bail hearings specifically related to what transpired prior to the police arriving at the Apartment, it is clear that Defendant's actions caused the police to respond and that his actions were disruptive, aggressive, and violent in nature. First, the NYPD responded to the Apartment as a result of multiple 911 calls, including one call from a tenant of the Apartment. Second, some of those calls indicated Defendant had a gun. Third, as noted above, one of the tenants of the Apartment told the officers who arrived at the Apartment, among other things, that: (1) Defendant had a gun; (2) the argument between Defendant and his girlfriend escalated into a physical altercation during which Defendant hit his

---

[6] I currently have before me Defendant's motion challenging the scientific methodology used by the OCME. My citation to this evidence is not a finding concerning Defendant's motion.

15

girlfriend; and (3) Defendant attempted to hit the tenant.  Fourth, this same tenant references an earlier time when the tenant apparently called 911 because of Defendant's actions.  Fifth, Defendant became agitated apparently after he realized that the police officers were not going to go away after receiving a description of the incident from him and his girlfriend.  That agitation took several forms, as can be seen on a videotape from one of the body-worn cameras, including raising his voice and telling the police that he had no tolerance for them and yelling at the police to "back the [expletive] up" and to leave him alone, and asking to speak with the tenant who had called 911 and when he is told he could not speak with her at that moment he began to call the tenant's name repeatedly.  (Govt. Opp., Exhibit G.)  Although there are certainly inferences that could be drawn from Defendant's actions on November 16, 2018, I need not delve into them here and merely identify his behavior in order to make an assessment of the potential danger Defendant poses to the community.  This behavior supports a finding that Defendant is a danger to the community, and militates against a finding in favor of Defendant's temporary release.

      Defendant's criminal record also supports a finding that he is a danger to the community and against his temporary release.  Defendant has been convicted on three violent felonies since December 2012:  (1) on December 4, 2012, Defendant was adjudicated a youthful offender after plea of guilty to Robbery in the First Degree, in violation of New York Penal Law § 160.15(4); (2) on that same date Defendant was convicted of Attempted Assault in the Second Degree, in violation of New York Penal Law § 120.05(1); and (3) on May 7, 2015, Defendant was convicted of  Manslaughter in the First Degree, in violation of New York Penal Law § 125.20(1).  He participated in the manslaughter while on probation for his two prior convictions.  Defendant argues that none of his prior convictions involved his possession of a firearm, and that he was not the most culpable of the participants in these prior crimes.  I need not consider these arguments

because they do not alter the fact that Defendant pled guilty to three prior violent felonies, that one of those crimes resulted in someone's death, and that he violated the terms of his probation. Defendant was sentenced to five years in prison for the manslaughter conviction. Defendant was 25 years old when he committed the instant offense. The violent nature of these crimes, his inability to abide by the terms of his probation, and short time period over which these crimes were committed all support a finding that Defendant is a danger to the community and militate against granting him temporary release. Along with the facts surrounding the instant charges, these crimes also demonstrate that Defendant has poor impulse control.

### d. The Nature and Seriousness of the Danger to the Community or to an Individual

Defendant's arrest for being a felon in possession itself raises the specter of danger to the community. The facts also suggest that on November 16, 2018, Defendant was brandishing the Firearm during a physical altercation with his girlfriend. The underlying facts surrounding his arrest and his three prior convictions for participating in violent felonies, including one that resulted in a death, all support a finding of dangerousness, and support a finding "by clear and convincing evidence" that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f)(2)(B).

Therefore, I find that the government has satisfied its "ultimate burden of persuasion by clear and convincing evidence that [D]efendant presents a danger to the community". *Mercedes*, 254 F.3d at 436, and conclude that Defendant's detention is warranted.

## 2. Reasons Advanced for Defendant's Release Pursuant to 18 U.S.C. § 3142(i)

I now consider Defendant's proffered reasons why his "release [is] necessary for preparation of [his] defense or for another compelling reason." 18 U.S.C. § 3142(i). Defendant

Harris argues that his temporary release is necessary to enable him to care for his mother and to prepare his defense. Defendant also argues that the COVID-19 health crisis and the conditions in the MCC in combination with his changed family circumstances constitute a compelling reasons justifying his temporary release to the Apartment.

I first discuss Defendant's claims related to COVID-19. Defendant concedes that he "does not presently have any underlying medical conditions and thus is not at a high risk of contracting COVID-19." (Doc. 38 at 5.) However, Defendant claims that he has a "history of sudden seizures as a result of a diagnosis as a child of seizure disorder, which he never properly addressed." (*Id*.) Defendant does not indicate the date of his last seizure, and does not specifically argue that his history of sudden seizures places at an increased risk of serious illness or death should he contract COVID-19.[7] These facts do not amount to compelling reasons warranting Defendant's temporary release.

Defendant argues that his changed family circumstances qualify as exceptional circumstances warranting his temporary release. Although I recognize the serious nature of illnesses suffered by Defendant's mother and the increased burden his absence allegedly places on his sister, I find that these facts—when considered against the underlying facts surrounding Defendant's arrest and his prior criminal history as described in detail above—are insufficient to establish extraordinary circumstances warranting his temporary release. I also note that prior to

---

[7] Defendant also claims that the BOP is unable "to adequately address the COVID-19 epidemic and the threat it poses to inmates." (Doc. 38 at 2.) Since Defendant has not demonstrated that he is at increased risk to become seriously ill or die should he contract COVID-19 his arguments concerning steps taken by the BOP are of minor importance to his motion. However, I address them briefly here. Defendant appears to suggest that the actions taken by the BOP are ineffective in limiting the spread of COVID-19. This argument is a generalization and an overstatement. Although it may be true that the steps taken by the BOP might not be sufficient to eliminate the possibility of the spread of COVID-19 within the MCC, those measures are clearly designed to and appear to have mitigated the spread of COVID-19. MCC, like other BOP facilities, began implementing its pandemic plan in January 2020, and has continued to implement efforts to mitigate the spread of COVID-19 since that time. *See Gumora*, 2020 WL 1862361, at *10–11.

his arrest on the instant charges that Defendant was not living with his mother and sister and does not appear to have been providing them with any financial, personal, or emotional support. The facts indicate that Defendant had only been staying at the Apartment on and off for a few weeks.  Defendant has not presented evidence that would warrant my reversing the conclusion of Judge Batts that Defendant's conduct on November 16, 2018, "is almost a definition of danger to the community," and "that there are no bail conditions that will protect the very people that are closest to Mr. Harris—his mother and his sister—and, again, I think that there is a chance that they might be witnesses in the case."  (07/16/19 Tr. at 5:13-6:6).  Although under certain circumstances family members could qualify as "another appropriate person" to whom Defendant could be released under section 3142(i), I find that the fact that Defendant's mother and sister may be witnesses disqualifies them from being considered.  In addition, my review of the recordings taken by the body-worn cameras on November 16, 2018, provide additional support for Judge Batts' findings that Defendant presents a danger to the community and that the proposed bail conditions are insufficient to mitigate that danger.

      I also find that Defendant's assertion that temporary release is warranted by his need to prepare his defense is not sufficient to amount to extraordinary circumstances when balanced against the facts supporting his continued detention.  Although Defendant argues that his assistance may be necessary in connection with the preparation for a hearing related to the DNA evidence, his submissions related to the DNA evidence do not support this assertion.  To the extent a hearing is necessary, the issues raised in that motion relate to the science and methodology used by the OCME in reaching their conclusions concerning the DNA evidence. Nothing in those motion papers or in Defendant's papers submitted in support of his temporary release, indicate that his assistance will be needed in any way for counsel to prepare for a DNA

hearing.

### IV. **Conclusion**

For the reasons stated above, I find that the facts presented by Defendant do not have a material bearing on the issue of whether he presents a danger to the community to warrant reconsideration of the prior detention determination, and, after balancing the reasons advanced for temporary release against Defendant's danger to the community and specific individuals, temporary release is not appropriate under Section 3142(i). Therefore, Defendant's motion is DENIED.

SO ORDERED.

Dated:    July 16, 2020
              New York, New York

_____
Vernon S. Broderick
United States District Judge