```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA       :

        -V-                    :      19 Cr. 300 (VSB)

DARREL HARRIS,                 :

        Defendant.             :

------------------------------X
```

## DEFENDANT'S SENTENCING SUBMISSION

Federal Defenders of New York
Attorney for Defendant
 **DARREL HARRIS**
52 Duane Street, 10th Floor
New York, NY 10007
Tel. (212) 417-8760

Robert M. Baum, Esq.
Of Counsel

# Federal Defenders
## OF NEW YORK, INC.

52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director
and Attorney-in-Chief*

June 4, 2021

**BY ECF AND EMAIL**

Honorable Vernon S. Broderick
United States District Judge
Southern District of New York
40 Foley Square Room 415
New York, New York 10007

Re:   **United States v. Darrel Harris**
      **19 Cr. 300 (VSB)**

Dear Judge Broderick,

Darrel Harris has been incarcerated at the Metropolitan Correctional Center ("MCC") and Metropolitan Detention Center ("MDC") for the past 27 months. During that period of time, he has endured lockdowns for weeks during the prison's search for weapons, and the COVID-19 pandemic. For the past 15 months he has not had access to any family visits; has spent limited time outside of his cell; and endured the death of his father during his incarceration. He has had to suffer privately the death of his father, unable to console his mother and sister, unable to attend the funeral and without an opportunity to say goodbye. He blames himself for that as a result of his incarceration. He now fears that an extended term of incarceration will prevent him from ever seeing his mother again due to her deteriorating health.

An emotional but heartfelt letter to the Court by Mr. Harris' sister provides the Court with details about Mr. Harris' history and characteristics, not found in the Presentence Report prepared by Probation. It details Mr. Harris' mother's physical and emotional health and the family's need to have Mr. Harris home as soon as possible.

We ask the Court to consider Mr. Harris' history and circumstances and impose a sentence that is a variance from the recommended Guidelines Range of 70-87 months We urge the Court to impose a sentence of 42 months incarceration (3.5 years). Such a sentence is substantial, and will meet the Court's mandate to

Honorable Vernon S. Broderick  
United States District Judge  
Southern District of New York

June 4, 2021  
Page 2

Re: <u>United States v. Darrel Harris</u>  
    19 Cr. 300 (VSB)

impose a sentence that is "sufficient, but not greater than necessary" to meet the goals of the Sentencing Reform Act.

### A Sentence Of 42 Months Is Warranted

A. <u>Darrell Harris' Family Circumstances</u>

A sentence of 42 months will not result in the immediate release of Mr. Harris, but will provide the family with some measure of hope that Mr. Harris' return will occur before it is too late for him to see and care for his mother as her health continues to deteriorate. The death of Mr. Harris' father while he was incarcerated had a profound impact on Mr. Harris. He blamed himself for his inability to see his father before he passed. He realizes that his criminal conduct hurts not only himself but also has an effect on his family. This event and the significant sentence we ask the Court to impose, will serve as a deterrent toward any future criminal conduct.

In a thoughtful and carefully considered letter to the Court, Miracle Harris, Darrell's sister, describes the tragedy that has confronted the Harris family, and the family's hope that Mr. Harris can be released from prison to help care for his mother and relieve the burdens on his sister. <u>See</u> Defense Exhibit A, Letter from Miracle Harris.

Mr. Harris' father was a Vietnam War veteran. Following his return from the war, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. "This left him with more mental scars than physical." <u>Id</u>. He had constant flashbacks to the atrocities he suffered. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and that was a burden that Darrell Harris mostly addressed. Eventually, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (<u>See</u> Defense Exhibit B, Death Certificate), while Mr. Harris was incarcerated.

Mr. Harris' mother survived a house fire when she was 16 years old, when a stove exploded, almost killing her. She lost her hands as a result, And had to undergo years of skin graft operations. She was never the same after that. As Miracle Harris describes, her mother "had to learn how to write, how to hold a cup, how to hold another person all without hands anymore." <u>Id</u>.

Honorable Vernon S. Broderick  
United States District Judge  
Southern District of New York

June 4, 2021  
Page 3

Re: **United States v. Darrel Harris**  
    **19 Cr. 300 (VSB)**

Darrell was greatly affected by drunken arguments between his parents and hearing his father screaming "as if he was back in Vietnam, having no idea we were his children." Id. Nothing affected Darrell greater than the death of his father and his inability to be there before he died and attend his funeral. He understands that his criminal conduct cost him this opportunity. But as Miracle writes, "Darrell has a greater understanding after the death of his father." He has expressed his remorse numerous times during phone calls, and although his father's death came about after he had been in and out of the hospital, it was sudden and unexpected. "Our dad died without the forgiveness of his son and Darrell is now forced to live without the forgiveness of his father." Id. In a prior letter to the Court, copied in the Presentence Report at ¶24, Ms. Harris wrote that attending her father's funeral without her brother "was one of the most painful moments of my life. I can't imagine doing the same for my mother."

As Ms. Harris writes, her mother's medical problems now extend beyond the fire and the alcoholism. "███████████████████████████████████████████████████████████████████████" Id. Ms. Harris notes that her mother requires around the clock care and "can't be left alone because ███████████████████████████████████████" Id. As a result, the family is currently coping because Miracle is studying for school at night remotely, while looking after her mother during the day. However, she writes that she doesn't see friends and doesn't go out other than to get groceries and pick up prescriptions. Having Darrell at home "would lift a huge weight off our shoulders, especially mine." "We desperately need Darrell at home." Id. She goes on to write that every day is a struggle. "Just because we're getting by doesn't mean we aren't in need of help." Ms. Harris is studying to be a Physician Assistant. She is starting an externship soon and is worried about leaving her mother. She is also going back to school physically rather than remotely and doing "clinicals" which could mean that she may be working a 24 hour shift which causes her great concern for her mother.

In a recent hospitalization at Montefiore Medical Center, Mr. Harris' mother was admitted for two days from April 7 to April 9, 2021. An after visit summary lists her medications and

Honorable Vernon S. Broderick  
United States District Judge  
Southern District of New York

June 4, 2021  
Page 4

Re: <u>**United States v. Darrel Harris**</u>  
    19 Cr. 300 (VSB)

ongoing medical issues. Defense Exhibit C. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ The record notes that she is required to take 13 different medications per day, some twice daily, some three times daily. Mr. Harris' mother is totally unable to manage her medications without assistance. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ <u>Id</u>.

In speaking about her brother, Ms. Harris relates how he has always been protective of her, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ She writes that she is aware of plans her brother has for improving his life and changing his conduct. He wants to return to work in the construction industry, where he has been previously employed. He wants to obtain his GED. He wants to be present to care for his mother, and most importantly, he wants to get mental health counseling to address his behavior and untreated problems related to his childhood.

B.   <u>The Harsh Conditions Of Detention</u>

Mr. Harris has been incarcerated primarily at MCC, (and is currently at MDC), for approximately 27 months. A lengthy period of incarceration in pretrial detention facilities that are effectively maximum security prisons. The rapid spread of COVID-19 in the MCC was frightening and stressful, At times, Mr. Harris did not know if he would live through that dark period of time. The harsh conditions of detention with the lockdowns, lack of contact with his family and deteriorating cleanliness of the MCC, overrun with mice, rats and other vermin, made his life a nightmare. He has suffered far in excess of what a normal period of incarceration is designed to do, under conditions many judges have termed "inhumane". His inability to be present for his father's funeral and the lack of visitors in the prison for more than 15 months, denying him an opportunity to grieve with his family, was especially painful.

As a matter of law, The Second Circuit has held that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures." <u>United States v. Carty</u>, 264 F.3d 191, 196 (2d Cir. 2001). District Court judges in the Southern District of New York have previously granted

Honorable Vernon S. Broderick  
United States District Judge  
Southern District of New York

June 4, 2021  
Page 5

Re: <u>United States v. Darrel Harris</u>  
    19 Cr. 300 (VSB)

departures on this basis. In <u>United States v. Mateo</u>, 299 F.Supp.2d 201 (S.D.N.Y. 2004), Judge Marrero downwardly departed from the Guidelines Range nine levels on the grounds of harsh pre-sentence confinement conditions and extraordinary family circumstances. The defendant was pregnant while incarcerated. She suffered labor pains for over 15 hours before assistance arrived. She was afraid and in severe pain. She eventually gave birth in the prison without medication. Prior to the birth, she had also been subjected to sexual harassment on one occasion.

Judge Marrero's rationale in finding that a departure was warranted for harsh pre-sentence confinement conditions is equally applicable to Mr. Harris. He found that the trauma suffered by the defendant during custody, "the full effects of which can never be comprehensively gauged, has inflicted forms of pain and suffering that have effectively enhanced, to a disproportionate degree, the level of punishment contemplated to be experienced by inmates in the typical case during the period of incarceration prescribed by the Guidelines for [the] offense." <u>Id</u>. at 212.

In <u>United States v. Salvador</u>, 2006 WL 2034637 (S.D.N.Y.), the Court found that unsanitary conditions and a lack of food were among the reasons justifying a departure for incarceration in the Dominican Republic while awaiting extradition to the United States. And in <u>United States v. Francis</u> 129 F.Supp. 2d 612, 619, (S.D.N.Y. 2001), the District Court downwardly departed due to the conditions of pre-sentence detention, finding that the defendant had suffered "extraordinary stress and fear" while incarcerated in a state correctional facility as a federal detainee.

We do not seek a downward departure. In evaluating the §3553(a) factors in this case, the prison lockdowns and pandemic and its effect on Mr. Harris must be considered as one factor in the determination of whether a variance is warranted. We believe it is.

Mr. Harris was confined to the MCC for most of his 27 months of incarceration. He has described the conditions of detention to counsel as inhumane. There were no personal visits. For months at a time, he was confined to his cell and would leave for perhaps

Honorable Vernon S. Broderick  
United States District Judge  
Southern District of New York

June 4, 2021  
Page 6

Re: <u>United States v. Darrel Harris</u>  
    19 Cr. 300 (VSB)

30 minutes every two to three days. During that period of time, he had to decide if he wanted to use his time to shower, call his family, or buy commissary items. It was impossible to do all three in the short period of time available to him. There were numerous days and weeks when inmates were confined to their cells for more than a few days at a time. In addition to being confined to his cell Mr. Harris had to deal with the unsanitary conditions prevalent at the MCC. There were rodents and insects running rampant throughout the jail. There were malfunctioning toilets overflowing.

From approximately late February, 2020, until the pandemic caused lockdown conditions, the MCC had already been in lockdown because the prison was conducting an investigation to search for a firearm that had been smuggled into the MCC. In this preceding period, there were no social visits, no attorney visits, no phone calls, limited time out of cells, and for approximately 8 days, there was a lockdown for 24 hours per day, 7 days per week. That was characterized by cold sandwiches for food, no clean clothes, no contact with the outside world and limited availability to shower.

Judges within this district have considered the impact of COVID-19 in the prison and its effects as a 3553(a) factor. Numerous District Judges have reduced sentences based on the pandemic and harsh pretrial conditions of detention. *E.g.* <u>See United States v. Morgan</u>, 19 Cr. 209 (RMB)(S.D.N.Y. May 5, 2020)(cutting the sentence to less than half of the low end of the Guidelines based in part on conditions at MDC during the pandemic and condemning the conditions at MCC and MDC prior to the current crisis); <u>United States v. Casillas</u>, 19 Cr. 863 (VSB),(S.D.N.Y. May 4, 2020)(reducing the length of the sentence in part based on conditions at MCC during the COVID-19 crisis); and <u>United States v. Pierson</u>, 14 Cr. 855 (LTS)(S.D.N.Y. May 4, 2020)(same for defendant detained at MDC).

In the recent sentencing of <u>Tiffany Days</u>, 19 Cr. 619 (CM), Judge McMahon made the following comments: "It is the finding of this Court that the conditions to which she was subjected are as disgusting, inhuman as anything I've heard about in any Colombian prison, but more so because we are supposed to be better than that." (Sentencing Transcript at 19:17).

Honorable Vernon S. Broderick  
United States District Judge  
Southern District of New York

June 4, 2021  
Page 7

Re: **United States v. Darrel Harris**  
**19 Cr. 300 (VSB)**

    Judge Engelmayer's thoughtful comments during the imposition of a sentence in United States v. Aracena De Jesus, 20 Cr. 19 (PAE) (S.D.N.Y. 2020), speaks volumes about the harsh conditions of detention and its impact on inmates. "Finally, I am mindful . . . that you have served most of your time in prison so far during the worst pandemic in this country during the past 100 years. I'm mindful that you may have contracted COVID-19 while in prison. I'm mindful that your experience in prison as a result of the pandemic, the preceding lockdown, the ensuing lockdown, and your own illness was frightful. Prison is supposed to be punishment, but it is not supposed to be trauma of that nature or close." Sent'g. Tr. at 36:10-18. "Bottom line, your time in the MCC was way harder than anyone intended when you were detained following your arrest. Any mature system of justice, any thoughtful judge in imposing the reasonable sentence here would have to recognize the unexpected and regrettable ardors that you experienced since your arrest in December." Id. Sent'g. Tr. at 37:6-11.

    In United States v. Jervis Cerino, 19 Cr. 323 (S.D.N.Y. 2020), Judge Rakoff was confronted with a Guidelines Range of 57-71 months for a Hobbs Act robbery, and imposed a sentence of 10 months. "[I]t is fair to say that conditions in the prison system now result in a harshness that is not the norm and that ought to be recognized by the court as a mitigating factor. In effect, you are serving harder time every day you are in the federal prisons."

C.    <u>Darrell Harris' Criminal History</u>

    Mr. Harris has three prior convictions but a quick review of his criminal record is deceiving. Mr. Harris was convicted of manslaughter in 2014, and served a sentence of five years incarceration. In that case, the records reflect that Mr. Harris was with another person who possessed a firearm and fired shots at the victim. Mr. Harris did not possess a weapon. Mr. Harris admitted to aiding and abetting the murder by saying the words "take it out" during the course of the incident.

    Mr. Harris is also alleged to have been involved in two robberies when he was 17 and 18 years old. In each of those incidents, he was with one or two other individuals who played a

Honorable Vernon S. Broderick	June 4, 2021
United States District Judge	Page 8
Southern District of New York

Re: <u>United States v. Darrel Harris</u>
    19 Cr. 300 (VSB)

more significant role. Mr. Harris never possessed a weapon and never took any property. In one case, he turned himself in when he learned that police were looking for him.

### CONCLUSION

The Court is mandated to impose a sentence that is "sufficient but not greater than necessary," to achieve the goals of the Sentencing Reform Act. A sentence of 42 months incarceration meets that mandate and effectively addresses the numerous mitigating circumstances in this case. It is a significant term of incarceration. The death of Mr. Harris' father, and his inability to see him, attend his funeral, and grieve his loss with his family, is a turning point in Mr. Harris' life. He fully blames himself for engaging in conduct which led to this result. That in itself will serve as an effective deterrent for future criminal conduct. He is now concerned about the health of his mother, the struggles of his sister in caring for his mother and the ever present thought that he may never see his mother again. We urge the Court to impose a sentence of 42 months incarceration.

Respectfully submitted,

Robert M. Baum, Esq.
Assistant Federal Defender
Tel. (212) 417-8760

RMB/wt

cc: Thomas John Wright, Esq.
    Assistant United States Attorney