UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

UNITED STATES OF AMERICA

-v-

DARREL HARRIS,

Defendant.

---------------------------------------------------------X

19-CR-300 (VSB)

**OPINION & ORDER**

Appearances:

Megan Wolfe Benett
Kreindler & Kreindler LLP
New York, NY
*Counsel for Defendant*

Thomas John Wright
United States Attorney's Office, SDNY
New York, NY
*Counsel for Government*

VERNON S. BRODERICK, United States District Judge:

On July 29, 2026, I denied the June 5, 2026 letter-motion, (Doc. 120), of Defendant Darrel Harris ("Defendant" or "Harris") requesting that I dismiss the violation of supervised release ("VOSR") specifications lodged against him. At this hearing, I stated that a lengthier opinion would be forthcoming. This is that opinion. For the reasons articulated below, I DENY Defendant's motion to dismiss the VOSR proceedings.

## I. Factual and Procedural Background

On July 6, 2021, Harris was sentenced to a term of fifty-five months imprisonment and three years of supervised release, after pleading guilty to being in possession of a firearm after being convicted of a crime punishable by imprisonment for a term exceeding one year. (Doc.

68.) At sentencing, I found that Harris' possession of the firearm at issue was not a passive possession. Rather, Harris was seen brandishing a firearm after apparently becoming involved in a domestic dispute. Harris' term of supervised release commenced on May 12, 2023. (*Id.*)

On December 15, 2023, the U.S. Probation Office requested that a summons be issued against Defendant for a violation of his conditions of supervised release. In the violation memorandum, Harris was charged with five specifications, including attempted murder. On December 19, 2023, Defendant's violation of supervised release proceeding was initiated through issuance of summons that I signed. The violation memorandum indicated that "[o]n November 14, 2023, [Probation Officer Amber Wilton] met with Mr. Harris to inquire about his recent arrest and the circumstances surrounding that arrest. Harris denied any culpability and stated that he was not involved in the arrest in question." On February 7, 2024, I held an initial VOSR hearing, during which Defendant was arraigned on the five specifications detailed in the violation report. (Doc. 70.) During that hearing, the Government provided a videotape that included the incident in question. Contrary to Harris' statements to Probation Officer Wilton, the videotape showed that Harris was involved in the incident on which the specifications in the violation memorandum were based. At the conclusion of the hearing, I ordered that Harris be remanded to the custody of the United States Marshal's Service. (Doc. 69.)

Over the next approximately two years, the parties filed multiple letter motions, which I endorsed, consenting to adjourn the VOSR hearing due to the parallel state court case, which the parties believed was "advantageous . . . to advance before a next appearance before [this] Court." (Docs. 83, 87, 89; *see also* Docs. 91, 93 (adjourning VOSR hearing dates because parallel state case was calendared for upcoming trial and the parties believed "that it is advantageous for the state court case to conclude before a next appearance before [this] Court"), 94 (same).)

On April 5, 2026, Harris' counsel Mark Gombiner ("Mr. Gombiner") filed a letter seeking an immediate bail hearing for Defendant because counsel "realized that Mr. Harris has been in custody on the pending V.O.S.R. charges for longer than the two year maximum term of incarceration authorized for a supervised release violation of a Class C felony." (Doc. 95 at 1.) On April 7, 2026, I held an initial bond hearing, during which I requested additional materials from the parties regarding their positions on the bail application and materials relevant to Defendant's possible release terms. After a further adjournment request on consent from the parties, (Doc. 98), on April 22, 2026, I granted Defendant bail with certain conditions for release from detention, including electronic home monitoring, and a co-signed bond. (Doc. 100.) I directed that Harris be detained until the conditions of the bond were met. (*Id.*) On May 12, 2026, Defendant was released from custody. (Doc. 110.)

Subsequently, after I had indicated my intention to move forward with the revocation hearing before Harris' term of supervised release expired on May 11, 2026, the parties submitted their arguments and exhibits for the evidentiary hearing. (*See* Docs. 103–05.) In his May 1, 2026 letter, Defendant argued that because he could not testify in the revocation proceeding "because of his pending state court trial . . . a hearing under such circumstances violate[d] due process." (Doc. 103 at 1.) On May 4, 2026, I met with the parties with the intention of holding an evidentiary revocation hearing. However, the hearing was further adjourned because Defendant requested appointment of new counsel due to Harris' claim of ineffective assistance of counsel from Mr. Gombiner. I appointed new counsel, Megan Benett ("Ms. Benett"), and the VOSR hearing was further adjourned so that Ms. Benett could properly familiarize herself to this case. Additionally, because Harris' current term of supervised release expired on May 11, 2026, I also requested that the parties submit their viewpoints on whether I retained jurisdiction over

Defendant's VOSR proceedings past this date. (*See* Docs. 106, 111.) On May 15, 2026, I issued an order indicating that delays can be "reasonably necessary," permitting courts to retain jurisdiction over a VOSR proceeding, even after the supervised release term expires. (Doc. 112 (internal quotation marks omitted).)

On June 5, 2026, Defendant filed a motion to dismiss the VOSR charges, (Doc. 120), and on July 7, 2026, the Government filed its opposition letter, (Doc. 126). By order dated July 9, 2026, I indicated that I would rule on Defendant's pending motion to dismiss at the July 29, 2026 hearing. (Doc. 127.) On July 29, 2026, after I heard argument from the parties on this motion, I denied Defendant's motion to dismiss and indicated that a lengthier forthcoming written opinion would be issued. I then held an evidentiary hearing at which the Government presented its evidence and I heard oral argument. At Ms. Benett's request, I provided the parties with the opportunity to make post-hearing submissions, which Defendant did before I issued my ruling and judgment in regard to the VOSR specifications.

## II. Legal Standard

"A district court may revoke supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of supervised release." *United States v. Farnham*, 834 F. App'x 679, 680 (2d Cir. 2021) (quoting *United States v. Glenn*, 744 F.3d 845, 847 (2d Cir. 2014)). The preponderance-of-the-evidence standard "requires proof that the defendant's violation of supervision was more likely than not." *United States v. Edwards*, 834 F.3d 180, 199 (2d Cir. 2016) (internal quotation marks omitted). "Revocation of a defendant's supervised release is governed by 18 U.S.C. § 3583, which, *inter alia*, permits a court to impose a maximum sentence of two years for violations of conditions of supervised release for which the

underlying offense was a Class C or Class D felony." *United States v. Epstein*, 620 F.3d 76, 78–79 (2d Cir. 2010).

However, "[h]earings to revoke supervised release, like hearings to revoke parole, are not criminal prosecutions." *United States v. Goode*, 700 F. App'x 100, 103 (3d Cir. 2017). As such, these proceedings do not trigger the "full panoply of rights" which attach during a criminal trial. *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). However, these proceedings are "worthy of some due process protection," because the revocation of probation entails a "loss of liberty." *United States v. Sanchez*, 225 F.3d 172, 175 (2d Cir. 2000) (quoting *United States v. Brown*, 899 F.2d 189, 193 (2d Cir. 1990)). Among these due process rights is "the right to a hearing at which the court determines two issues: whether the probationer violated a condition of probation as a matter of fact and, if so, whether this fact warrants revocation." *Id.* (internal quotation marks omitted). Due process requires that a person accused of violating the conditions of his supervised release receive a revocation hearing "within a reasonable time after [the person] is taken into custody." *Morrissey*, 408 U.S. at 488. Similarly, Federal Rule of Criminal Procedure 32.1(b)(2) provides that "[u]nless waived by the person [in custody for violating a condition of supervised release], the court must hold the revocation hearing within a reasonable time in the district having jurisdiction." Fed. R. Crim. P. 32.1(b)(2). "[T]he time under Rule 32.1 does not start to run until the defendant is taken into custody on the supervised release violation." *United States v. Stelle*, No. 02-CR-381, 2009 WL 3856133, at *1 (N.D.N.Y. Nov. 17, 2009).

Unreasonable delay itself is not sufficient to establish a due process violation. *King v. Hasty*, 154 F.Supp.2d 396, 401 (E.D.N.Y. 2001). "In addition to showing that the delay was unreasonable, [a defendant] must establish prejudice—that is, that the delay substantially limited] his ability to defend against the charged violations." *United States v. Morrison*, 843 F.

App'x 386, 388 (2d Cir. 2021) (summary order) (internal quotation marks omitted and alterations adopted). "[A] briefer delay, for example, may still be [a violation of due process] if it results in the loss of a crucial witness, while a longer delay may not be . . . if [a defendant] is still fairly able to mount [his] defense." *United States v. Matos*, 589 F. Supp. 2d 407, 408 (S.D.N.Y. 2008).

## III. <u>Discussion</u>

Harris argues that the delay was unreasonable and not necessary because the "entirety of the VOSR charges are premised on a state court prosecution, the evidence of which the government could have accessed from even before Mr. Harris was remanded by this Court," and courts have found that even a shorter period of time than at issue here "may raise concerns." (Doc. 120 at 3.) Harris also notes that although his counsel made or consented to several adjournment requests for the VOSR hearing, he was "not aware of all of them, and they should not be attributed to him."[1] (*Id.* at 4.)

Without deciding the issue of whether Mr. Gombiner actually kept Harris apprised of all of the adjournments or obtained his consent for each such adjournment, I nonetheless find that a defendant's express consent is not always required for certain purely tactical decisions, such as continuances or scheduling matters. *See United States v. Lynch*, 726 F.3d 346, 356 (2d Cir. 2013) (holding that for purposes of the Speedy Trial Act, a continuance can be granted if it is sought by counsel without consent of the defendant). "To hold that every instance of waiver requires the personal consent of the client himself or herself would be impractical." *Gonzalez v. United States*, 553 U.S. 242, 250 (2008). Defendant does not cite a case, nor can I find a case,

[1] In her June 5, 2026 letter and during the July 29, 2026 evidentiary hearing, Ms. Benett offered to provide "further details as to which adjournments Mr. Harris knew of and/or consented to," by following up with "prior counsel." (Doc. 120 at 4 n.4.) I indicated that there was no need to provide additional details.

that requires that adjournments of revocation hearings must be personally attributed to a defendant for a court to interpret these jointly requested adjournments as attributable to both parties.

Between February 7, 2024, when Harris was remanded to the custody of the U.S. Marshal's Service, (Doc. 69), and April 5, 2026, when Defendant's counsel first requested a bail hearing because Harris had been incarcerated for longer than the two-year statutory maximum for his violation, (Doc. 95), every adjournment was issued on consent from counsel for both parties, (*see e.g.*, Docs. 77, 79, 81, 89, 91, 93). Indeed, multiple adjournments specifically noted that the reason for the delay was because "the parties remain of the belief that it is advantageous for the state court case to conclude before a next appearance before the Court." (*See e.g.*, Docs. 91, 93.) In light of Harris' acquiescence to some of the adjournments and his counsel's explicit request for the adjournments, the delays associated with the adjournments do not appear to be unreasonable. *See United States v. Madden*, 515 F.3d 601, 607 (6th Cir. 2008) (delay "caused by [the defendant's] own conduct" is not unreasonable).)

Further, any delay after the May 4, 2026 revocation hearing was explicitly on consent from Defendant, where he indicated that he did not want to proceed with Mr. Gombiner and requested appointment of new counsel due to ineffective assistance of counsel. I appointed Ms. Benett as Defendant's new counsel and adjourned the hearing so that Ms. Benett could familiarize herself with the case and her new client.

Moreover, even if I were to consider Defendant's lack of express consent to these adjournments, "substantial delays may sometimes be reasonable in the context of revocation hearings." *United States v. Jetter*, 577 F. App'x 5, 7 (2d Cir. 2014). "Requiring a federal court to begin revocation proceedings before the state court has determined whether the defendant is

guilty on the charges underlying revocation [can] thrust the federal court into a determination of the defendant's guilt under state law, an area fundamentally reserved to the states." *United States v. Ramos*, 401 F.3d 111, 117–18 (2d Cir. 2005). "And judicial efficiency is [sometimes] better served in any event by ascertaining the defendant's guilt once in state court, rather than twice." *Id.* at 118. Here, I have been "mindful of [my] obligation to hold the revocation hearing within a reasonable time" and have "balanced that with considering [Defendant's] requests to defer the revocation hearing pending resolution of the state proceeding." *United States v. James*, No. 21-6231, 2023 WL 3151100, at *2 (6th Cir. Apr. 28, 2023).

Therefore, "[g]iven that state adjudications [can be] relevant to the federal determination of whether or not a supervisee has committed a crime in violation of state law, it [was] not unreasonable for [me] to maintain the status quo—holding the VOSR in abeyance pending resolution of the state-court case." *United States v. McLeod*, No. 21-2642, 2022 WL 17825535, at *3 (2d Cir. Dec. 21, 2022) (summary order) (internal quotation marks omitted). This is particularly the case where the adjournments are at the request of the parties. Indeed, the Second Circuit has found that a delay between the initial presentment of the violation charge and a final revocation hearing in order to wait for state court proceedings can actually "protect [a] defendant from prejudice in state court," "rather than prejudicing the defendant's ability to mount his defense." *Jetter*, 577 F. App'x at 7 (internal quotation marks omitted). "[F]ar from offending [Defendant's] due process rights, such a delay [can] keep[] him from being faced with the intolerable dilemma of having to decide whether to testify at a revocation hearing while criminal charges are pending." *Heath v. U.S. Parole Comm'n*, 526 F. Supp. 584, 585 (W.D.N.Y. 1981).[2]

[2] The Second Circuit has rejected the contention that a defendant "was deprived of his Fifth Amendment right against compelled self-incrimination by the district court's decision to proceed with a revocation hearing prior to adjudication in state court of the charges that served as the basis for the revocation request." *United States v. Jones*, 299 F.3d 103, 105 (2d Cir. 2002). Thus, although it was reasonable that I did not hold the revocation hearing

Thus, I do not find that the over two-year delay in holding the revocation hearing was itself unreasonable.

Harris also argues that he faces prejudice from this delay because his total length of incarceration has exceeded the two-year statutory maximum and the "general passage of time" means that witnesses may become unavailable or have their memories fade. (Doc. 120 at 3.) The passage of time cannot on its own warrant prejudice without anything further. *See Ramos*, 401 F.3d at 116 (noting that Defendant's contention that delay prevented him from obtaining the testimony of a particular witness is "entirely unsupported in the record" and that he had not shown "that this witness would have been available for the revocation proceeding had it been held earlier"). Defendant has not set forth any specific facts that would demonstrate that this delay has "substantially limit[ed] his ability to defend against the charge that the conditions of supervised release were violated." *Manware v. Lindsay*, No. CV-07-2218S, 2009 WL 1546314, at *4 (E.D.N.Y. June 1, 2009) (internal quotation marks omitted and alterations adopted). Indeed, Ms. Benett did not identify any specific witnesses or evidence she was unable to identify and obtain due to the delay in proceeding with the violation hearing.

Moreover, Harris has never stated that he intended to put on any testimony with regard to the violation proceeding. Other than jointly agreed-to exhibits, Harris represented that he did not plan to offer any further evidence or testimony—and he did not offer any at the hearing.[3] In addition, because "hearsay is generally admissible" at a revocation hearing, *United States v. Andrews*, No. 11-CR-923, 2025 WL 1424389, at *3 (S.D.N.Y. May 16, 2025), Harris could have

because the parties requested adjournments in light of the pending parallel state court proceedings, it is not required that I wait for the state court proceedings to resolve before holding this revocation hearing.

[3] I note that Harris did not call his sister as a witness, who based upon the video evidence witnessed the incident at the Hotel, or provide a proffer of what she would say if called as a witness.

supported his case with out-of-court statements and did not need to only rely on live testimony. In short, nothing prevented Harris from investigating the incident and gathering evidence to defend against the violation proceedings, and indeed, the video evidence in the case indicates that one of the witnesses was Harris' sister (the co-signor of his recent bond) and that he is apparently familiar with the other individuals who witnessed the underlying incident, suggesting that these witnesses are not all unavailable.

However, Harris is correct that this delay did "subject him to an excessive sentence." *See United States v. Santiago*, 738 F. App'x 66, 71 (3d Cir. 2018) (finding that a defendant was not denied due process rights because of a 16-month delay for his VOSR sentencing because the court held a revocation hearing within three days of his state-court sentencing, the hearing was continued at defendant's request in order to allow his counsel to further develop arguments in mitigation of his sentence, and any delay in sentencing while he was in state custody did not subject him to an excessive sentence or otherwise prejudice his ability to defend himself in his VOSR hearing). Until I granted Harris bail on April 22, 2026, subject to certain conditions being met prior to his release, and he was released on May 12, 2026, he was incarcerated in federal custody for over two years and three months—exceeding the statutory maximum of his sentence if he was found to have violated his supervised release conditions. *See Epstein*, 620 F.3d at 78–79. In the Sixth Amendment context, any additional amount of incarceration can constitute prejudice. *See Glover v. United States,* 531 U.S. 198, 203 (2001). Here, I acknowledge that "an earlier hearing would have helped [Defendant] reduce his time in custody." *Morrison*, 843 F. App'x at 388 (2d Cir. 2021). In other words, Defendant could have served at least three months less—the part of his custody that was in excess to the statutory maximum. While the excess time that Harris served in custody presents some concern, I note that Defendant does not cite, nor

have I found, a case dismissing a revocation charge solely on this basis; in particular where, as here: (1) Defendant consented to the delay (even if done by counsel without Defendant's express consent); (2) the parties acknowledged wanting to wait for the state court proceeding to move forward; and (3) there is otherwise no prejudice to a defendant's ability to present his case against the VOSR charge, especially now that he has been released and has had almost three months to prepare his defense with his new attorney.

Courts have "recognized that the most serious form of prejudice [in the revocation context] is that which results in the impairment of an accused's ability to lodge a defense." *Goode*, 700 F. App'x at 104. Here, as discussed, this form of prejudice is not at issue. Thus, a dismissal of the underlying revocation charge does not appear to be the proper remedy for Harris' excess incarceration period, and this period of delay was not unreasonable nor does it prejudice Harris in mounting a defense against the revocation charges.

## IV. **Conclusion**

For these reasons, Defendant's motion to dismiss the VOSR specifications and proceedings is DENIED.

SO ORDERED.

Dated: August 10, 2026
New York, New York

Vernon Broderick

Vernon S. Broderick
United States District Judge